## TENANT IN POSSESSION UNDER A WRITTEN LEASE.

Court of Appeals for Hamilton County.

WILLIAM S. WALKER V. HERMAN BUMILLER.*

Decided, May 15, 1916.

*Landlord and Tenant—Written Lease for One Year—Tenant Holding Over Becomes Bound for Another Year—Parol Contract for New Lease from Month to Month Within the Statute of Frauds—Corbin v. Hafer, Reversed by the Supreme Court Without Opinion, Not Followed.*

1. When a tenant under a written lease for one year holds over after the expiration of his lease, he impliedly holds as a tenant for another year, at the option of the landlord, under the same terms and conditions as in the original lease.

2. A parol contract for a new lease from month to month, between landlord and tenant in possession under an existing lease by the year, is within the statute of frauds unless the possession and holding after the expiration of the first lease is distinctly referable to the new contract and not to a continuance under the original lease.

*Edward H. Brink* and *Chas. B. Wilby,* for plaintiff in error.
*Dempsey & Nieberding,* contra.

JONES (Oliver B.), J.

The question to be determined in this case is the validity of a parol agreement between a landlord and tenant made while in possession under a written lease for one year, which attempts to create a new lease from month to month after the expiration of the original term.

It is admitted that the defendant held over, but he alleges that while in possession under his written lease for a year, he by an oral arrangement with plaintiff agreed to continue after the termination of that lease to hold as a tenant from month to month at the same rental. Such an agreement is within the statute of frauds (Sections 8620 and 8621, General Code). It is a contract for an interest in or concerning lands and must be in writing to be valid.

A familiar exception to the rule, that an oral letting of land is invalid under the statute of frauds, is where the agreement is

---

*Affirming the parallel case of *Long* v. *Kahn,* 18 N.P.(N.S.).

carried out by the delivery of possession thereunder, thus taking it out of the statute by part performance.

But it has been clearly held that a parol agreement to take effect at once or in the future, for a lease between a landlord and a tenant in possession under a previous letting is within the statute of frauds and can not be enforced, and evidence will not be admitted in support of such a contract.

The earliest case in Ohio in which the Supreme Court has spoken on the subject is *Armstrong* v. *Kattenhorn*, 11 Ohio, 265, a leading case frequently cited with approval, in which the syllabus is as follows:

"A parol contract for a lease between landlord and tenant in possession, under a prior lease, is within the statute of frauds; unless possession be held solely under, and in performance of the parol contract, the terms of holding, clearly indicating the possession to be under the subsequent parol lease."

And in the opinion, the court say:

"But, if possession be relied upon, it must be clearly referable to the contract, and be delivered and held in performance of it.

"Possession must give the contract life, and if they can possibly be separated, the parol agreement perishes under the operation of the statute.

"Hence, if the possession can be referred to any other source, than the parol contract, which it is claimed to support, even to the wrongful act of the party in possession, or to a different contract, the statute applies.

"* * * So with a tenant in possession, in case of a parol agreement for different terms of holding, if no acts are performed which clearly show that the possession is continued under the last agreement, it will be referred to the original tenancy, and such parol contract will be void.

"In the case now under consideration, the record shows no act that is not as clearly referable to the possession under the old tenancy, as the parol lease upon which recovery is sought.

"If it be contended that rent was paid under the parol contract, it may be replied, from aught that appears in the record, that the same rent was due on the original tenancy, under which the defendants were in possession.

"The possession of the defendants, then, is not shown, by unequivocal acts, to have been continued or held solely in performance of the parol contract. and must be referred to the prior lease.

"Possession must accompany the contract, in performance of it, in all cases, to avoid the statute."

In the instant case there was nothing to distinguish the possession of the tenant from a mere continuance—a holding over under the original lease, the rent being the same and no change apparent in the relation of the parties.

In the case of *Crawford* v. *Wick*, 18 O. S., 190, the first proposition of the syllabus reads:

"A parol contract for a new or supplemental lease between a landlord and his tenant, in possession under a former and subsisting lease, is within the statute of frauds; and the continued possession of the tenant does not take the parol contract out of the operation of the statute, where the continued possession of the tenant is as well referable to the first lease as to the second parol lease. *Armstrong* v. *Kattenhorn*, 11 Ohio, 265, followed and approved."

In the opinion of the court in *Myers* v. *Croswell*, 45 O. S., 543, commencing at page 547, the following language is used:

"Whatever objection may be urged against the doctrine of part performance of contracts within the statute of frauds, or be said of its tendency to promote frauds, or of the necessity for courts to make a stand against further encroachments on the statute, it is too well settled to be now open to dispute, that certain acts done in the part performance of verbal contracts for the sale of lands, may operate to take them out of the statute, and generally possession of the land delivered and received under and in pursuance of the contract amounts to such part performance. But it is equally well settled that to have that effect the possession must be connected with and in consequence of the contract; it must be in pursuance to its terms and in part execution of them. In other words the possession must pursue and substantiate the contract.

"In *Phillips* v. *Thompson*, 1 John Ch., 131, 149, Chancellor Kent says: 'It is well settled that if a party sets up part performance to take a parol agreement out of the statute, he must show acts unequivocally referring to, and resulting from that agreement, such as the party would not have done unless on account of that very agreement, and with a direct view to its performance. There must be no equivocation or uncertainty in the case.'"

And on page 548, Pomeroy on the Specific Performance of Contracts, Section 108, is quoted as follows:

"A plaintiff can not, in the face of the statute, prove a verbal contract by parol evidence and then show that it has been partly performed. This course of proceeding would be a virtual repeal of the statute. He must first prove acts done by himself or on his behalf which point unmistakably to a contract between himself and the defendant, which can not, in the ordinary course of human conduct be accounted for in any other manner than as having been done in pursuance of a contract, and which would not have been done without an existing contract; and although these acts of part performance can not of themselves indicate all the terms of the agreement sought to be enforced, they must be consistent with it and in conformity with its provisions when these shall have been shown by the subsequent parol evidence. It follows from this invariable rule, that acts which do not unmistakably point to a contract existing between the parties, or which can be reasonably accounted for in some other manner than as having been done in pursuance of a contract do not constitute a part performance sufficient in any case to take it out of the operation of the statute, even though a verbal agreement has actually been made between the parties."

And then the rule in Ohio is stated as announced in *Armstrong* v. *Kattenhorn.*

In *Clark* v. *Guest,* 54 O. S., 298, which involved the question of an oral extension of time for the removal of standing timber under a previous written contract of sale thereof, the court says on page 305:

"Such verbal extension of time is as clearly within the statute as a verbal extension of a lease, which this court has held to be within the statute. *Armstrong* v. *Kattenhorn,* 11 Ohio, 265; *Crawford* v. *Wick,* 18 Ohio St., 190."

And on page 306:

"The circuit court found as its conclusion of law upon the facts found, that it would be a fraud upon the defendant in error to revoke such verbal extension of time; and that the case was therefore taken out of the statute of frauds. This is not tenable. The statute was enacted to prevent frauds and perjuries. The law-making power knew that frauds and perjuries would be practiced with or without the statute, but it was

thought that less harm would come from enacting and enforcing the statute, than otherwise. The only exceptions to the statute, engrafted therein by judicial interpretation, if not by judicial legislation, that can be justly defended, are cases in which the acts of both parties are such as to imply a contract with substantially the same certainty as would be shown by a written memorandum, as in the case of a verbal sale of lands followed by a delivery of possession to the purchaser, and valuable permanent improvements made by him with the knowledge of the vendor.

"To say that to refuse to carry out a verbal purchase of standing growing trees is a fraud on part of the owner of the trees, is to disregard the statute, and in effect a repeal thereof. * * * He had no legal right to rely upon the verbal contract, and where there is no right there can be no fraud. If he intended to rely upon the extension of time he should have caused the contract therefor to be reduced to writing. The statute was enacted to protect men in their property rights and it should be enforced unless in cases clearly within some of the well established exceptions."

The rule in Ohio as to a tenant holding over is laid down in *B. & O. R. R.* v. *West,* 57 O. S., 161, the last two clauses of the syllabus being as follows:

"Where, after the expiration of the term, the tenant holds over and pays rent for a part of another year, without any new agreement with the landlord, he becomes a tenant for that year at the same rent, and can not terminate the tenancy before the end of the year without the landlord's consent.

"The obligation of the tenant to pay the rent for the year, in such case, is not within the statute of frauds; the holding over being equivalent to a new entry."

And in the opinion, on page 168, the court say:

"The tenant, by holding over, is regarded as consenting or proposing to enter upon a new term for another year at the same rent and upon the conditions of the prior occupancy, and the landlord's acceptance of the proposed tenancy is presumed from his receiving the rent, or other acquiesence. The agreement arises by implication of law from the conduct of the parties after the expiration of the former tenancy; and, in this respect, is essentially different from those agreements made by parties while in possession under an existing lease, for a new lease to commence in the future; as was the case of *Armstrong* v. *Kattenhorn,* 11 Ohio, 265, and *Crawford & Murray* v. *Wick,* 18 Ohio St., 190."

This language is quoted with approval in *Gladwell* v. *Holcomb,* 60 O. S., 427, in which case the law is thus stated in the syllabus:

"When the tenant holds over after the expiration of any year, the landlord has the option to treat him as a tenant for another year, or as a trespasser; and unless there has been an election to treat him as a tenant, possession may be recovered by the landlord in an action of forcible detention, after the service of the three days' notice required by the statute.

"A parol agreement for a lease to commence in the future, with a person already in possession of the premises as a tenant, is within the statute of frauds."

In the case of *Strong* v. *Schmidt,* 15 C. C., 233, which involved a question of surrender, the court said in its opinion, pages 238 and 239:

"The testimony clearly shows that the defendant was in possession under a written lease. He refused to sign a new lease for the reason that he was not satisfied with its terms. He wrote letter to the other parties, saying that he would hold from month to month, and stated that orally, perhaps to the agent. The parties themselves, instead of consenting to that, answered that they would not consent. So that we have the terms, so far as any writing is concerned. We have a proposition to hold on different terms, with a refusal on the part of the landlord and under that state of facts the defendant continued in possession. There was no change in possession, nor did the landlord in any manner or form recognize that there was a holding over under different terms than those of the lease. We see no reason whatever why the statute of frauds does not apply here and we think that all the evidence in regard to the statements made by the defendant as to how he would hold or in what manner was entirely irrelevent and illegal.

"The rule of law is—it is said that the presumption of law is, that he holds under the former contract from year to year. The language is varied by different courts in delivering the opinions: by some it is said to be a 'presumption,' by some it said to be an 'implied contract,' and by some it is said to be a 'constructive contract;' but no matter what it is called the law clearly is, that where the party has continued in possession after the termination of a year's lease and the landlord has accepted rent from him, that the lessee holds for another year, and that the same is as binding and obligatory upon both parties, as it would be if re-executed. The landlord can not evade it, only at the expira-

tion of the year, nor can the tenant leave possession of the premises. He is likewise bound to pay rent for the year. If he chooses to leave the premises, his obligation still remains to pay. It is a binding contract. That contract can only be set aside in some manner that has reference to the law of the land. There are two and perhaps three ways in which it can be set aside; a new contract may be made, and there may be a surrender of the premises; but the new contract, in order to be binding, must be either a contract in writing under the statute of frauds, or it must be, if a parol contract, in pursuance of a change of possession, as the Supreme Court has said, which makes a new and binding contract.''

And in *Schneider* v. *Curran,* 19 C. C., 224, the same doctrine was recognized in the syllabus, as follows:

''A parol contract for a lease between landlord and tenant, and the tenant in possession under a prior verbal lease, is within the statute of frauds and void, and the continued possession alone of a tenant does not take such contract out of the operation of the statute; there must be a new possession taken to do this.''

Nothwithstanding the clear and unqualified words of the statute, G. C., 8620, 8621, and the reported decisions shown in the long line of authorities in this state, none of which have been in any way questioned, it is now claimed that the settled rule is to be changed because of the case of *Moore* v. *Harter,* 67 O. S., 250, and the unreported case of *Corbin* v. *Hafer,* 72 O. S., 685, which reversed the decision of the superior court in general term, *Hafer* v. *Corbin,* 6 N.P.(N.S.), 468. The trial judge in the instant case felt himself bound by this unreported case. In passing on the motion for a new trial, he said:

''Whatever may have been the law in this state on this question, it certainly was changed by the ruling of the Supreme Court in the case of *Corbin* v. *Hafer,* 72 O. S., 685. In that case the same question as that presented in the case at bar was decided. The general term held such agreement void. * * * The Supreme Court reversed this and entered judgment for the defendant. * * *

''Believing myself bound under the rule of *stare decisis* to follow the Supreme Court the motion for a new trial on this point is overruled.''

It is true as shown by the report in 6 N.P.(N.S.), 468, that the question now before this court was involved in *Corbin* v. *Hafer*. But the Supreme Court did not desire to make the decision of that case a rule of law to control future cases. No opinion was written and the court thus refrained from disturbing the authority of any of the cases cited above beginning with *Armstrong* v. *Kattenhorn*. We have been frequently admonished by the Supreme Court itself that an unreported case can in no wise be regarded as an authority and, *a fortiori*, that rule must be held to prevail where as in this case to hold otherwise would have the effect of changing decisions that have been repeated time and again by that court for more than seventy years, without having a single line announcing such change or giving any reason for it.

But it is contended that, as the court based its action in *Corbin* v. *Hafer* on the authority of *Moore* v. *Harter*, 67 O. S., 250, this action must be regarded in the same light as a reported decision extending the exception to the general rule announced in that case. In *Moore* v. *Harter* a landlord had advised his tenant before the expiration of his term that the rent for the succeeding year would be increased fifty dollars if he held over. The tenant did hold over, and the terms and conditions of the original lease were held to be modified as to the rate of rental, in accordance with that notice. The court say (67 O. S., 254) in the opinion:

"The tenant's dissent from the terms proposed by the landlord amounts to nothing unless the latter accepts it, because the presumption is that one holding over, after notice from the landlord that a change of terms would be required, is presumed to do so on the terms proposed by the landlord. Otherwise he would put himself in the wrong and would be liable to be treated as a trespasser."

And the court distinguished *Armstrong* v. *Kattenhorn* as not pertinent to that case, because the landlord owned the property and had an absolute right to fix the rent, and the rights of the tenant expired with his lease, unless a new term was created by his holding over, under *R. R. Co.* v. *West*, 57 O. S., 161, in which event the new term would be under the increased rent.

A careful reading of *Moore* v. *Harter* will show that the question there decided does not apply to *Corbin* v. *Hafer*. And the mere reference to it as an authority in the list of unreported cases in 72 O. S., 685, can not be held to extend that decision so that it will apply. To do so would in effect wipe out the statute of frauds entirely as between a landlord and a tenant in possession. A tenant once in possession could, regardless of the statute, fasten any kind of a lease upon the landlord if he could only secure the necessary witnesses to show a parol contract.

Since the decision of *Corbin* v. *Hafer*, 72 O. S., 685, at least two decisions have been announced which recognize no change in the established rule: *Hopkins* v. *Carroll*, 11 C.C.(N.S.), 605; *Rickard* v. *Utter*, No. 619, Court of Appeals of Hamilton County, decided by the judges of the sixth district, Chittenden, J., writing the opinion.

The language of Redesdale, Lord Chancellor, in *Lindsay* v. *Lynch*, 2 Sch. & Lef., 4, quoted in the argument of counsel in the report of *Armstrong* v. *Kattenhorn*, 11 Ohio, 267-8, is especially applicable to the situation here:

"I am not disposed to carry the cases which have been determined on the statute of frauds any further than I am compelled by former decisions. The statute was made for the purpose of preventing perjuries and frauds; and nothing can be more manifest, to any person who has been in the habit of practicing in courts of equity, than that the relaxation of that statute has been a ground of much perjury and much fraud. If the statute had been rigorously observed, the result would, probably, have been, that fewer instances of parol agreements would have occurred. Agreements would, from the necessity of the case, have been reduced to writing; whereas, it is manifest that the decisions on the subject have opened a new door to fraud; and that, under pretense of part execution if possession is had in any way whatever, means are frequently found to put a court of equity in such a situation, that, without departing from its rules, it feels obliged to break through the statute."

The majority of the court are unwilling because of an unreported case to read into a reported decision such an extension of the exception to a general rule as will in effect overrule at least four well considered decisions of the Supreme Court of acknowledged authority. We can at least know what they decide, and

we feel bound to follow them rather than to conjecture that they have been displaced, modified and overruled by an unreported case.

Indeed this has been distinctly declared to be the proper course, in *Louden* v. *Cincinnati*, 90 O. S., 144, in the opinion of the court at pages 157 and 158, where the court practically admitted that the question under discussion had been given a contrary decision in the case of *Armstrong* v. *Cincinnati*, 12 C.C. (N.S.), 76, which had been affirmed without report by the Supreme Court in 82 O. S., 454. But no weight was given to this unreported decision; after suggesting that the reason for its affirmance may have been the fact that the weight of evidence was involved, the court say:

"The law of this state in reference to this subject having been declared in the case of *City of Tiffin* v. *McCormack* (34 O. S., 638), and *Bradford Glycerine Co.* v. *St. Mary's Woolen Mfg. Co.* (60 O. S., 560), it would follow that if this court intended to depart from the doctrine announced in these cases it would have reported the case and overruled these authorities."

The doctrine of *stare decisis* requires that rules of law when clearly announced and established by a court of last resort should not be lightly disregarded and set aside, but should be adhered to and followed. Proper judicial subordination requires that this court should be governed by the written decisions of the Supreme Court, and it is not at liberty to modify or extend clearly defined doctrines laid down in reported cases on some presumption that they may have been changed by reason of some unreported case. If a decision of the Supreme Court is to be overruled or modified, it must be done in distinct terms by the written decision of that court, and can not be implied from the judgment in an unreported case.

The salutory effect of the statute of frauds has long been demonstrated, and it should be sustained in full force while it remains a part of our statute law. If it is desired to modify or repeal it, that can be done by the General Assembly, and judicial legislation should not be invoked to extend the exceptions already engrafted upon it by decisions of any court other than that of last resort.

The judgment of the court of common pleas is therefore reversed and the cause remanded.

JONES (E. H.), P. J., concurs; GORMAN, J., dissents.


GORMAN, J., dissenting:

I find myself unable to concur in the conclusion reached in this case by my associates, for the following reasons:

The question presented in this case for our consideration is: Can a binding parol agreement be made between landlord and tenant while the tenant is in.possession of the premises under a written lease for one year and before the expiration of the term, whereby the term of the holding is changed to a tenancy from month to month?

The defendant occupied the premises belonging to the plaintiff in error under a lease for one year. Defendant in error claims that before the expiration of the year he made a verbal agreement with the plaintiff in error that he might hold from month to month, after the expiration of the year, upon the payment of the same monthly rental until such time as he desired to vacate the premises. Plaintiff in error, who was defendant below, denied that such an agreement was made.

The tenant, defendant in error, vacated the premises after occupying them thirteen months, and at the end of the second year the landlord, the plaintiff in error, brought suit to recover the difference between the amount of the rent which would be due under the lease, and the amount of rent which he received upon a re-letting of the premisess. The landlord, Walker, rented the premises for a part of the year and received $291.67, while the rental under the lease was to have been $440 for eleven months; and the action was to recover the difference—$148.33.

Upon the trial of the case the court admitted evidence of the parol agreement between the landlord and tenant, over. the objection of counsel for plaintiff.

The court charged the jury in substance that if they should find that the landlord and tenant had made a parol agreement while the tenant was in possession under the lease, the tenant might after the end of the year continue as a tenant from month

to month, and if they further found that the tenant had paid for the entire time that he had occupied the premises, they should return a verdict for the defendant. This charge was excepted to by the plaintiff, and the jury returned a verdict in favor of the defendant. The cause is now here on error.

It is claimed that the court erred in admitting the evidence of the oral agreement between plaintiff and defendant and in charging as above set forth.

In the unreported case of *Corbin* v. *Hafer*, 72 O. S., 685, the court says:

"Judgment of the general term reversed and that of special term affirmed, on authority of *Moore* v. *Harter*, 67 O. S., 250."

The case of *Corbin* v. *Hafer* as decided by the general term of the Superior Court of Cincinnati is found reported in 6 N.P. (N.S.), 468, Judges Hosea, Ferris and Hoffheimer sitting. The facts in that case as shown in that report disclose a case identical with the instant case. In the trial of that case in the superior court in special term before Judge Rufus B. Smith, a verdict was returned in favor of the defendant and a judgment entered thereon. Corbin claimed to have made a verbal agreement with Hafer, while he, Corbin, was occupying the premises under a lease from year to year, whereby Hafer agreed that he, Corbin, could after the expiration of the year occupy the premises from month to month. Hafer denied that this agreement was made. Evidence was admitted by the trial court of the conversation between Corbin and Hafer that established the parol agreement for a holding from month to month. A special charge asked by Hafer to the effect that, unless the agreement as to the change of the terms of tenancy was in writing under the statute of frauds the agreement would be null and void, was refused and exception noted. In the general charge the court told the jury that if the agreement was established in parol and the rent was paid for the entire time that the tenant occupied the premises Hafer could not recover against Corbin for the remainder of the year, and an exception was noted. The general term reversed the special term and entered judgment in favor of Hafer for the amount of the rent due for the remainder of the year. These

appear to be the only errors claimed to exist in this case, and the Supreme Court having reversed the general term upon the authority of *Moore* v. *Harter, supra,* we should look to that case to determine what principle was involved in its decision.

In *Moore* v. *Harter,* 67 O. S., 250, a tenant was occupying premises under a yearly lease from April 1, 1892, and without any further lease continued to occupy the same until April 1, 1895, paying therefor $450 per year. Before the expiration of the last year the landlord notified the tenant that the rent for the next year would be $500 per year instead of $450. The tenant held over without giving any notice, intention or intimation that he was dissatisfied with the increased rent. It was held that by holding over after being notified by the landlord that the rent would be increased from $450 to $500 a year the tenant became liable for the entire yearly rental at the increased rate of $500. The syllabus of the case is as follows:

"When a tenant at the expiration of a written lease holds over as a tenant from year to year, upon the terms of the original lease, and the landlord notifies the tenant, before the beginning of another year, that if the latter holds over into another year the rent will be increased, and the tenant does so hold over, the terms and conditions of the original lease will be modified in respect to the rent so as to conform to such notice, but in all other respects they will continue to be applicable to the new tenancy. *Armstrong* v. *Kattenhorn et al,* 11 Ohio, 265, distinguished."

On page 253 of this report the court says:

"It follows that the lessor and lessee may by agreement change the terms of the original tenancy; and, if, before the beginning of another year, the landlord notifies the tenant that the rent will be increased and the latter nevertheless holds over to another year, to that extent the terms of the original lease will not apply, but it will be applicable in all other respects. The reason of this is that the tenant must be presumed to have assented to the change. The authorities are numerous and conclusive on this point." Citing several authorities.

On page 254 the court distinguishes the case of *Armstrong* v. *Kattenhorn,* 11 Ohio, 265, as follows:

"The doctrine of *Armstrong* v. *Kattenhorn* is that if the possession of the tenant 'can be referred to any other source than the parol contract which it is claimed to support, even to the wrongful act of the party in possession, or to a different contract, the statute applies.' The possession in that case was held to be ambiguous and as easily referable to the old lease as to the new one, and hence that the latter was within the statute of frauds and void. Although the statute of frauds declares that leases not in conformity with the statute shall be void, yet that will not prevent a periodical tenancy, subject to the terms of the original lease, from arising by taking possession under the invalid lease and paying rent in accordance therewith." (Citing numerous authorities.) "And that is precisely that which was done in this case and in all the cases cited above as included in the same class. The continuing in possession, after notice from the landlord to the tenant that he could not do so except under prescribed conditions, is presumed to be a possession under the named conditions. It could not be referable to the former lease without showing that the landlord had consented to withdraw the conditions."

In the case before us the rule which the trial court laid down was applied on a state of facts, the converse of the facts in the case of *Moore* v. *Harter, supra.* In *Moore* v. *Harter* the landlord stated the terms and conditions upon which the tenant could remain, and the tenant remained without making any objection, and it was held that by so doing he had agreed to the landlord's conditions and acquiesced as it were, and was therefore bound. In the case before us the tenant made the proposition to the landlord that he would remain as a tenant only from month to month and the landlord agreed to this proposition. The tenant continued in possession after this for one month, and it appears to me that if the rule laid down in *Moore* v. *Harter* is applicable to the case of *Corbin* v. *Hafer* it must also be applicable to the case under consideration. The tenant and the landlord agreed verbally to a change in the terms of the lease, and the continued possession of the tenant is under the new parol agreement made between the landlord and tenant. It appears to me that if a parol agreement between landlord and tenant to increase the rent can be made while a tenant is holding under a written lease, then an agreement between the landlord and ten-

ant to change the tenancy from a yearly to a monthly one can also rest in parol.

I apprehend that there is no special merit in a claim that a landlord only may make an oral proposition to modify the terms of a written lease, before the expiration of the term, which may be orally accepted by the tenant or accepted by the acquiescence and thus bind the tenant. Upon what rational grounds can it be claimed that a tenant under a written lease for a year may not make an oral proposition to his landlord during the term, to modify its terms as to the rent or duration of the term, which being accepted orally by the landlord will not bind the landlord? Shall there be a different rule of law applied to a tenant from that applied to a landlord? Can it be material whether the agreement between the landlord and tenant results from the landlord accepting verbally the tenant's oral offer, or the tenant verbally accepting the landlord's oral offer? It appears to me to be a case of tweedle-dum and tweedle-dee. If the holding over is referable to the oral agreement, then it must stand as the agreement of the parties regardless of whether the proposal came from the landlord or the tenant. The only question is: Did the minds of the parties meet in the oral agreement?

I would not rest my dissenting opinion upon the unreported case of *Corbin* v. *Hafer,* but I find that the principles laid down in *Moore* v. *Harter* upon the authority of which *Corbin* v. *Hafer* was reversed by the Supreme Court, apply to the facts in the instant case, and I come to the conclusion that the court of common pleas in the trial of the case below did not err in admitting the evidence complained of, showing the parol agreement between the landlord and the tenant; nor did the court err in its charge to the jury that they should consider the evidence of the oral agreement.

The jury having found against the landlord Walker, I can not say that the verdict is against the weight of the evidence. Nor indeed is it seriously claimed that this court should reverse the lower court upon the weight of the evidence, but only on account of the errors of the trial court in admitting the evidence of the parol agreement to change the terms of the tenancy, and in refusing to rule out that evidence after it was admitted, and in

charging that the jury might consider parol evidence as to the change of the terms of the tenancy.

It appears to me that under *Moore* v. *Harter* plaintiff is not required to show that the agreement for a change of the tenancy was in writing under the statute of fraud in order to make binding the agreement between landlord and tenant entered into while the tenant is in possession under a written lease from year to year or for any other term.

Jones on Landlord and Tenant, Section 210, page 250, in dis cussing this question uses the following language:

"But when the landlord has by his conduct led the tenant to believe that he will not be charged as tenant for the entire year, it is axiomatic that the landlord can not change his position and fix an unexpected burden of liability upon the tenancy. So it follows that any new agreement between a landlord and tenant relative to the continued occupancy of leased premises after the termination of the term precludes the landlord from charging the tenant with liability for a full year's rent by reason of such continued occupancy.

"This result is not contingent on the fact that the new agreement is valid and capable of enforcement; it rests on an estoppel against the landlord for inducing the tenant to act on his representations. And it matters not that the new contract was invalid under the statute of frauds because not in writing." (Citing *Singer Mfg. Co.* v. *Sayre,* 75 Ala., 270; *Crommelin* v. *Theiss,* 31 Ala., 412; contra, *Parker* v. *Hollis,* 50 Ala., 411.) "The continued payment and receipt of rent after the expiration of the term is not necessarily inconsistent with the existence of a new agreement between the parties."

Without undertaking further to discuss all the authorities cited by counsel for the parties to this proceeding, I content myself with holding that under the authority of *Moore* v. *Harter,* 67 O. S., 250, approved in *Corbin* v. *Hafer,* 72 O. S., 685, a parol agreement may be entered into between landlord and tenant, during the term of a written lease for one year while the tenant is in possession under the lease, which modifies the terms and conditions of the lease, and the statute of frauds can not be invoked to nullify the parol agreement.